UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SHARON L. CROSS,

        Plaintiff,

  v.            3:09-CV-1293

JOHN E. POTTER, et al.,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

  Plaintiff Sharon Cross commenced the instant action against Defendants claiming that she was wrongfully terminated from her employment with the United States Postal Service ("USPS") and that Defendant American Postal Workers Union (the "Union") handled her grievance with bad faith, negligence, lack of proper investigation, and failed to properly represent her.

## I. FACTS[1]

---

[1] The following facts are taken, in large part, from the Union's statement of material facts submitted pursuant to N.D.N.Y.L.R. 7.1(a)(3). Plaintiff submitted a responsive statement of material facts that, in many instances, fails to comply with the requirements of Local Rule 7.1(a)(3). Specifically, in response to many of the Union's factual assertions, Plaintiff merely indicates that she "dispute[s]" the allegation and objects on the grounds that: (1) the Union's evidence is "not authenticated;" (2) facts justifying the opposition may exist "but cannot . . . be stated herein"; and (3) the facts are unavailable to her because there has been no response to her Freedom of Information Act request. Pursuant to Rule 7.1(a)(3), denials must be supported by citations to the record evidencing the factual dispute. If the non-movant does not have facts necessary to justify her opposition, she must present an affidavit or declaration specifying why she cannot present such facts. In this Circuit, an affidavit has been required to state: (1) what facts are sought; (2) how those facts are to be obtained; (3) how the facts are reasonably expected to create a genuine issue of material fact; and (4) why the non-movant was unsuccessful in obtaining the documents. Hudson River Sloop Clearwater, Inc. v. Department of Navy, 891 F.2d 414, 422 (2d Cir. 1989). Plaintiff has not specified what facts she seeks to obtain, how they are

(continued...)

Plaintiff was an employee with the USPS. On December 14, 2007, the United States Attorneys Office filed an Information against Plaintiff charging her with filing false medical documentation with the United States Postal Service in violation of 18 U.S.C. § 1018. See United States v. Cross, 07-cr-563, dkt. no. 7 (N.D.N.Y.). On January 14, 2008, the USPS sent Plaintiff a Notice of Removal informing her that her employment with the USPS would be terminated effective February 23, 2008 for "[s]ubmitting falsified medical documentation" in support of claims for leave from her employment. See Union Ex. 2;[2] Am. Compl. at ¶ 8. On December 4, 2008, after a jury trial, Plaintiff was acquitted of the charges against her. See United States v. Cross, 07-cr-563, dkt. nos. 49, 50. Despite the acquittal in the criminal case, the USPS continued its efforts to remove Plaintiff from her position.

Under the Collective Bargaining Agreement, grievances that involve disciplinary action against an employee are filed at the local union level by union stewards or the employee. See Union Ex. 1. The local union filed a grievance on Plaintiff's behalf.

---

[1](...continued)
reasonably expected to create a genuine issue of material fact, and, aside from a generic Freedom of Information Act request submitted to the Union, what efforts she has made to obtain those facts. Of course, the Union is not subject to the Freedom of Information Act, 5 U.S.C. §§ 551 (defining the term "agency"); 552, and, thus, Plaintiff was not entitled to any information from the Union pursuant to that Act. There is no evidence in the record that Plaintiff submitted a FOIA request to the USPS.

[2] Without any citation to the record, Plaintiff disputes having received this notice. In her Amended Complaint, Plaintiff contends that she first learned of her removal on or about June 22, 2009. Am. Compl. at ¶ 9. As will be seen, this is contrary to Plaintiff's admission that she received a letter dated April 21, 2009 from the Union advising her that there was a hearing concerning "the grievance for your removal." Union Ex. 5. "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id. For purposes of the pending motions, the Court will assume that Plaintiff did not receive notice in January 2008.

See Timmerman Aff. at ¶ 4. The Union represented Plaintiff at steps 1 and 2[3] of the grievance process. Id. The USPS denied the grievance at both steps.[4] Id.

Elizabeth Swigert, a National Business Agent fo the Union, represented the Union at the Step 3 grievance meeting. Id. at ¶ 5; Union Ex. 3. The Union contended that there was no just cause for Plaintiff's removal. Id. Plaintiff's grievance was denied at step 3. Id.[5] The Union then appealed Plaintiff's grievance to the final step of the grievance procedure - arbitration. Timmerman Aff. at ¶ 6; Union Ex. 4. Bernie Timmerman was assigned by the Union to represent the Union at the arbitration hearing. Id.

On April 15, 2009, Timmerman mailed Plaintiff a letter by certified and regular mail informing her that he would be handling her arbitration hearing scheduled for April 21, 2009. Id. Timmerman advised Plaintiff that it was very important that she contact him to prepare for the hearing.[6] Id. Plaintiff did not respond to the letter. Timmerman Aff. at ¶ 8.[7]

The arbitration hearing was held on April 21, 2009. Timmerman appeared at the hearing, but Plaintiff did not. Id. At the hearing, it was determined to give Plaintiff ten days to

---

[3] Step 1 involves attempting to resolve the issue with the employee's supervisor. Step 2 involves attempting to resolve the issue with the "installation head or designee."

[4] Plaintiff denies the facts in this paragraph but fails to articulate how she has reasonably sought to obtain information necessary to oppose the motion or what information she seeks to obtain that would demonstrate a disputed fact on this issue. In her Amended Complaint, Plaintiff implicitly concedes that the Union represented her (albeit in what she believes to have been an improper manner). See Am. Compl. at ¶¶ 27 - 30, 44.

[5] Plaintiff denies receiving information about Swigert "or this alleged step 3." Pl.'s Answer to Timmerman Decl. at ¶ 5. Whether Plaintiff received any such information is immaterial to whether the Union represented her at step 3 (or the prior steps).

[6] Without citing to the record, Plaintiff denies having received this letter.

[7] Plaintiff again disputes these facts, including whether she received various letters. It is difficult to conceive what discovery Plaintiff might need to create a triable issue concerning these facts. The Court will assume, for purposes of this motion, that Plaintiff did not receive the letter from Timmerman or any other notice of the arbitration.

explain why she was unable to attend the hearing. Id. at ¶ 9; Union Ex. 8 at p. 2.

Timmerman sent Plaintiff a letter stating, in part, that:

> The hearing took place today involving case number: B06C-1B-D 08102867, which is the grievance for your removal. Letters were sent to you on April 4, 2009 and April 15, 2009 regarding the April 21, 2009 arbitration hearing and you failed to respond to those notifications. It is imperative that you respond within ten (10) days by letter explaining the reason you were unable to attend the arbitration hearing. . . . Your response will be shared with the arbitrator. . . . I cannot express enough the importance of responding to this letter. However, I must also inform you that, if you fail to respond within the ten (10) days, the arbitrator will dismiss your case.[8]

Timmerman Aff. at ¶ 9; Union Ex. 5.

By letter dated April 29, 2009, Plaintiff sent a letter to Timmerman stating, in part that:

> This letter is written to request that you as the President of the Central NY Area Local #257 American Postal Workers Union AFL-CIO zealously represent me in the grievance against the US Postal Service and seek to recover:
>
> 1. Job reinstatement . . .
> 2. Back pay with interest
> 3. Step increases
> 4. All benefits lost
> 5. Attorney fees & costs
> 6. Damages

Union Ex. 6.

In her letter to Timmerman, Plaintiff also purported to make a "FOI Request" for materials maintained by the Union and/or the USPS for "records . . . maintained concerning

---

[8] Plaintiff "[d]ispute[s] knowledge of everything except that a letter was sent at some point which was received on April 28. . . ."

this matter regarding SHARON CROSS. . . from October 23, 1999 - present date." Id.[9]  In her letter, Plaintiff continued:

> Upon receipt of the above referenced FOI request for records, and an adequate time to prepare, a hearing can be scheduled which is acceptable for time and place for all parties.  As of this date I have been provided insufficient information from anyone regarding this matter.[10]

Id.

By letter dated May 4, 2009, Timmerman forwarded Plaintiff's letter to the arbitrator.  Union Ex. 7.  Thereafter, the arbitrator denied Plaintiff's grievance "due to the failure of the grievant to appear for the schedule arbitration hearing and her failure to provide an adequate explanation when afforded the opportunity to do so."  Union Ex. 8.  The arbitrator found, among other things, that:

> It is apparent from the grievant's response to the Union's letter dated April 21, 2009 that 47 Beaver Street, Cooperstown, New York is [Plaintiff's] correct address and that she receives the mail sent to that address.  She nonetheless failed to respond to the several letters sent by the Union to that address prior to the scheduled arbitration, failed to contact the Union prior to the date of the hearing and failed to appear at the hearing. . . . The grievant did not inform the Union prior to the hearing that she needed additional information or time to prepare, did not avail herself of the opportunities offered by the Union to prepare for the hearing, and did not request additional information or time to prepare for the arbitration prior to or on the day of the scheduled hearing.

Id.

On November 15, 2009, Plaintiff filed an unfair labor practice charge against the Union claiming that it breached its duty of fair representation.  On January 6, 2010, the National Labor Relations Board dismissed the charge claiming that the "investigation

---

[9] As previously noted, because the Union is not a government agency, the Union was not subject to the Freedom of Information Law.  There is no evidence in the record that Plaintiff submitted a FOIA request to the USPS.

[10] Plaintiff does not dispute that she "sent a letter requesting adjournment with FOI request."

disclosed that the Union filed and diligently processed a grievance on your behalf related to your termination up through and including arbitration."[11] Union Ex. 10.

Plaintiff then commenced the instant action against the Union claiming a breach of the duty of fair representation.[12] The crux of her Complaint is that, because she was acquitted of the criminal charges, there was no basis for the employment action against her and the Union's failure to argue such was a violation of its duty of fair representation. Presently before the Court is the Union's motion to dismiss pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56. Plaintiff opposes the motion and cross-moves for summary judgment against the Union.

## II.     STANDARD OF REVIEW

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65. "Factual allegations must be enough to raise a right to relief above the speculative level. . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965. "'[T]he

---

[11] Plaintiff disputes these facts as well, without any citation to the record or explanation of what facts are sought that might reasonably create a genuine dispute over these facts.

[12] Although Plaintiff's Amended Complaint is rather lengthy, it is replete with legal conclusions, conclusory statements, and colorful accusations, but lacking in factual allegations.

pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" Id. at 1965 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." Ashcroft, 129 S. Ct. at 1949.  Legal conclusions must be supported by factual allegations. Iqbal, at 1950.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. 557) (internal quotations omitted).

Rule 56 of the Federal Rules of Civil Procedures governs motions for summary judgment.  It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56( c).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those

portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

With these standards in mind, the Court will address the pending motion.

### III.    DISCUSSION

Plaintiff contends that the Union breached its duty of fair representation. A union "has a duty to represent fairly all employees subject to the collective bargaining agreement." Spellacy v. Airline Pilots Ass'n-Int'l, 156 F.3d 120, 126 (2d Cir. 1998) (citing Air Line Pilots Ass'n v. O'Neill, 499 U.S. 65, 74, 111 S. Ct. 1127, 113 L. Ed.2d 51 (1991)). A court reviewing allegations of the breach of the duty of fair representation must be "highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities." Vaughn v. Air Line Pilots Ass'n, Intern., 604 F.3d 703, 709 (2d Cir. 2010) (quoting O'Neill, 499 U.S. at 78, 111 S. Ct. 1127). "To prove that a union has breached its duty of fair representation, the challenging member[] must establish two elements. First, [she] must prove that the union's actions or inactions are either 'arbitrary, discriminatory, or in bad faith. Second, the challenging member[] must demonstrate a causal

connection between the union's wrongful conduct and their injuries. Vaughn, 604 F.3d at 709 (internal quotations and citations omitted).

> A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational. Moreover, tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach. A union's acts are discriminatory when substantial evidence indicates that it engaged in discrimination that was intentional, severe, and unrelated to legitimate union objectives. Bad faith, which encompasses fraud, dishonesty, and other intentionally misleading conduct, requires proof that the union acted with an improper intent, purpose, or motive.

Vaughn, 604 F.3d at 709-10 (internal quotations and citations omitted).

Here, there are insufficient factual allegations to sustain a claim against the Union. Although Plaintiff makes many conclusory allegations concerning the Union's conduct, she does not support them with sufficient factual allegations. The Union filed a grievance on behalf of Plaintiff and followed through to the final step of the grievance process. Even assuming Plaintiff did not receive the letters concerning the arbitration hearing from Timmerman or the local Union president, Fred Ashley, the Union represented Plaintiff throughout the grievance procedure, including attempting to contact Plaintiff to prepare for the arbitration hearing and attending the hearing on her behalf. There are no allegations in the Complaint or evidence in the record plausibly suggesting that the Union's conduct at any level of the grievance process was so far outside the range of reasonableness so as to be irrational.

There similarly are insufficient plausible allegations or evidence of discrimination. Plaintiff contends that Union stewards called her a "scab" and coerced her into believing she

had to join the Union to get "any real help" against management.[13]  Notwithstanding these allegations, Plaintiff does not cite any examples of severe conduct unrelated to the Union's objectives.  To the contrary, it appears that the Union represented Plaintiff at every step of the grievance process and sought to work with Plaintiff to properly represent her.  Finally, there are no plausible allegations or record evidence suggesting any bad faith or improper motive on the part of the Union.  The local Union represented Plaintiff at the first two steps.  Unsuccessful at those steps, the matter was turned over to the National Union to handle the remaining steps.  For the arbitration, the National Union appointed Timmerman, an experienced individual who has been involved in arbitrations for the Union for sixteen years.  Timmerman attempted to contact Plaintiff to prepare for the hearing.  Timmerman appeared at the hearing and, when Plaintiff did not show up, successfully obtained a ten day period of time to allow Plaintiff to explain her absence.  Timmerman then followed up by writing Plaintiff a letter (which she admits receiving) explaining the status of her grievance and the importance of her responding to his letter.[14]

Even assuming Plaintiff could demonstrate the first element of her claim, she is unable to demonstrate the necessary causation.  The ultimate failure of Plaintiff's grievance rests on her own shoulders for failing to respond to Timmerman's request for assistance in preparing for the arbitration hearing, failing to appear at the arbitration hearing, and, after Timmerman secured for Plaintiff a ten day period of time to explain her absence, failing to

---

[13] Despite this allegation, Plaintiff also contends that she was a non-union employee. Am. Compl. at ¶ 69.

[14] It will be recalled that Timmerman advised Plaintiff that "[i]t is imperative you respond within ten (10) days by letter explaining the reason you were unable to attend the arbitration hearing. . . .I cannot express enough the importance of responding to this letter.  However, I must also inform you that if you fail to respond within the ten (10) days, the arbitrator will dismiss your case."

provide a reason for her failure to appear when given an opportunity to do so.  Even if, as Plaintiff alleges, she did not receive notice of the arbitration hearing, she admits receiving Timmerman's April 21, 2009 letter.  Her responsive letter dated April 29, 2010 does not indicate that she did not receive a Notice of Removal, that she did not receive any subsequent information concerning her grievance, or that she did not receive notice of the arbitration hearing, and did not otherwise explain her failure to attend the hearing.  There is nothing in the record from which it reasonably can be inferred that something the Union did caused Plaintiff's grievance to be dismissed.

      Plaintiff makes much of the fact that she was acquitted of related criminal charges prior to the arbitration.  Indeed, upon reading the Amended Complaint, it appears clear that the primary crux of Plaintiffs' claims against Defendants is that, because she was acquitted of the criminal charges, the disciplinary action necessarily must have been without any legitimate basis.  The argument continues that, because of her acquittal, the USPS's failure to discontinue the adverse employment action must have been motivated by improper purposes (e.g., her age, gender, or in retaliation for engaging in protected activity) and the Union's failure to argue her acquittal during the grievance process evidences the Union's incompetence, bias, bad faith, discriminatory conduct, and recklessness.  For the following reasons, however, Plaintiff's acquittal is irrelevant.

      First, Plaintiff was acquitted on December 4, 2008.  It appears that the first two steps of her grievance were processed before that date.  See Ex. 3 (a December 10, 2008 letter denying step 3 of the grievance).  Second, there is no indication Plaintiff provided

information concerning her acquittal to Timmerman prior to the arbitration.[15]  Third, as noted, the grievance was denied for Plaintiff's failure to appear; not based on the merits of the evidence in support of the USPS's charge against her.

Fourth, although the Court can understand why Plaintiff might think her acquittal on the criminal charges may seem like a vindication with respect to anything else pertaining to that same incident, that belief is incorrect.  The reason is that in the criminal case the prosecution had to prove its case using the "beyond a reasonable doubt" standard.  That standard is much higher than the "preponderance of the evidence" standard used in civil cases.  It is possible for the preponderance of the evidence standard to be satisfied even if the higher beyond a reasonable doubt standard is not.  Because of this difference in the standards, evidence of acquittals generally are inadmissible at civil trials concerning the same incident. See Johnson v. Elk Lake School Dist., 283 F.3d 138 (3d Cir. 2002) ("evidence of . . . acquittal of a crime . . . is generally inadmissible in a civil trial concerning the same incident. . . This rule is primarily based on the fact that criminal and civil trials require different burdens of proof for proving guilt and liability, respectively."); Cunningham v. Wash. Gas Light Co., 1988 WL 90400, *1 (D.D.C.1988) ("The rationale for excluding such . . . [an] acquittal from evidence in a civil trial is obvious.  While a conviction can be considered a judicial determination of guilt, a dismissal, acquittal, or failure to prosecute may simply reflect an inability to meet the requisite burden of proof.  The danger that a jury will accept a non-conviction as determinative outweighs any probative value that such evidence may hold."); see also Duttle v. Bandler & Kass, 1990 WL 113187, at *4 (S.D.N.Y. 1990); Laverne

---

[15] By letter dated December 5, 2008, Plaintiff sent a letter to the local Union president informing him that she had been acquitted.

v. Corning, 316 F. Supp. 629, 633 (1970) ("Plaintiffs are not trying to introduce into evidence a trial court's acquittal which, of course, would be inadmissible since it could merely indicate, at best, that the Government had proven its case only by a preponderance of the evidence and not beyond a reasonable doubt."). The "beyond a reasonable doubt" standard similarly is not required or typically used in arbitration proceedings, see Batyreva v. New York City Dept. of Educ., 2010 WL 3860401, at *6 (S.D.N.Y. 2010) (noting that the arbitrator issued an award based on the preponderance of the evidence standard); Attard v. New York City Dept. of Educ., 2010 WL 3893603, at *4 (E.D.N.Y. 2010) (noting that, in a case involving disciplinary charges against an employee, the arbitrator issued an award using the preponderance of the evidence standard); Sierra v. Bally Total Fitness Corp., 2007 WL 1028937 (E.D.N.Y. 2007) (similar). The arbitrator may very well have refused to consider, or discounted the effect of, the acquittal when considering the issue before her.[16] The acquittal certainly was not binding upon the arbitrator. Thus, contrary to Plaintiff's belief, her acquittal was not dispositive of the issue before the arbitrator.[17] Even assuming Plaintiff's grievance was decided on the merits, the Union's failure to present evidence of her acquittal is insufficient to constitute a breach of the duty of fair representation.

Finally, Plaintiff's claims against the Union are time barred because she commenced the instant action more than six months after April 28, 2009, the date by which she reasonably should have known of a potential breach of the duty of fair representation.

---

[16] For similar reasons, the USPS was not required to accept the acquittal as determinative in its decision whether to remove Plaintiff from her employment or to pursue the Notice of Removal.

[17] The logical extension of this analysis is that Plaintiff's acquittal is of little to no value as evidence to prove improper conduct by the Union or the USPS. Indeed, the fact of her acquittal may not even be admissible in this case.

See Ramey v. District 141, Intern. Ass'n of Machinists and Aerospace Workers, 378 F.3d 269, 278 (noting that a six month statute of limitations applies to duty of fair representation cases and that the cause of action accrues no later than the time when the plaintiff knew or reasonably should have known that a breach has occurred.); see also White v. White Rose Food, 128 F.3d 110, 114 (2d Cir. 1997).  Plaintiff admits receiving Timmerman's April 21, 2009 letter on April 28, 2009.  By that time, Plaintiff knew (or reasonably should have known) that: (1) there was a grievance concerning her removal; (2) the Union contended that several letters had been sent to Plaintiff concerning the April 21, 2009 arbitration hearing; (3) the Union contended that Plaintiff failed to respond to those letters; (4) an arbitration hearing had been held on April 21, 2009 (and, thus, her grievance had already been processed through the first three steps and that she lost at each of those steps); (5) the Union appeared at the hearing on her behalf; and (6) her grievance would be dismissed if she did not provide adequate justification for her failure to attend the hearing.  Thus, Plaintiff reasonably should have known of any potential breach of the duty of fair representation by that time.  Plaintiff filed her Complaint on November 18, 2009, which is more than six months after April 28, 2009.

## IV.     CONCLUSION

For the foregoing reasons, the Union's motion to dismiss or, in the alternative, for summary judgment is GRANTED and the Amended Complaint is DISMISSED against the Union and Defendant William Burrus.  Plaintiff's cross-motion for summary judgment is DENIED.

**Further, Plaintiff is cautioned that any future filings with this Court must strictly comply with N.D.N.Y.L.R. 10.1 (and the other local rules of this Court)**

**concerning the form of her papers. The rules require, among other things, that papers be double-spaced and paginated and adhere to specified page limits. Any future filings that do not comply with the Court's local rules will be rejected.**

IT IS SO ORDERED.

Dated:December 20, 2010

_____
Thomas J. McAvoy
Senior, U.S. District Judge