UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -

SHARON L. CROSS,

        Plaintiff,

    v.                                             3:09-CV-1293

JOHN E. POTTER, et al.,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiff Sharon Cross commenced the instant action against Defendants claiming that she was wrongfully terminated from her employment with the United States Postal Service ("U.S.P.S."). Presently before the Court is Defendants' motion and Plaintiff's cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56.

## I.    BACKGROUND

Plaintiff was employed by the U.S.P.S. from 1999 until 2009. In or about December 2005, Plaintiff's supervisor, George Alsheimer, stated to the Plaintiff that "[t]he Post Office should not hire women, they take FMLA too much and men don't, Ill [sic] fire you if you keep taking FMLA." Jan. 8, 2013 Cross Aff. at ¶4. Plaintiff further alleges that she was "harrased and picked on by the [union] stewards in the workplace for being a non-union member." *Id.* at ¶6.

On December 14, 2007, the United States Attorneys Office filed a two-count criminal information charging Plaintiff with submitting false medical documentation to the

U.S.P.S. in violation of 18 U.S.C. § 1018.  On January 14, 2008, based on the same facts as those alleged in the criminal charges, the U.S.P.S. sent Plaintiff a Notice of Removal, informing her that her employment with the U.S.P.S. would be terminated effective February 23, 2008.  The Notice of Removal claimed that Plaintiff "submitted seven (7) falsified medical notes to the U.S.P.S. . . . ." in support of her claims for leave. Plaintiff was acquitted of the criminal charges, but the U.S.P.S. continued the removal process.  Plaintiff filed a grievance through the union.  Plaintiff was removed from service effective June 4, 2009.

Plaintiff then commenced the instant action.  Defendants move for summary judgment on the grounds that Plaintiff: (1) failed to timely exhaust her administrative remedies; (2) fails to establish claims for age and gender discrimination and retaliation; (3) fails to establish a claim against John Potter in his individual capacity; (4) fails to establish that her privacy rights were violated by the U.S.P.S.; (5) cannot establish a hybrid claim against the U.S.P.S.; and (6) cannot establish independent claims for the intentional infliction of emotional distress and/or defamation.  Dkt. 146, at p. 2.  Plaintiff filed a cross-motion for summary judgment on the same claims, as well as claims for the intentional infliction of emotion distress, defamation, *res ipsa loquitor*, disability harassment, retaliation for taking FMLA leave, and a violation of the Privacy Act and constitutional privacy rights.

## II.    STANDARD OF REVIEW

Both parties move for summary judgment pursuant to Fed. R. Civ. P. 56.  It is well settled that, on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, *see Tenenbaum v.*

*Williams,* 193 F.3d 581, 593 (2d Cir.1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994), or on conclusory allegations or unsubstantiated speculation. *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998).

## III.    DISCUSSION

Prior to discussing the merits of the claims before the Court, it is necessary to address a number of initial matters, namely matters concerning compliance with the Local Rules, a determination of which claims are properly before the Court, and the effect of Plaintiff's acquittal on the present action. The Court will then consider the

pending motions for summary judgment pertaining to the remaining claims.

### a. Non-Compliance with Local Rules

On several occasions, the Court warned Plaintiff that papers that do not comply with Local Rule 10.1 would be rejected. *See* Dkt. Nos. 151, 143. Plaintiff was specifically warned that papers must be consecutively numbered and double-spaced and that the failure to comply with Rule 10.1 will result in her papers being "**STRICKEN AND NOT CONSIDERED BY THE COURT**." Dkt. 143 (emphasis in original); *see also* N.D.N.Y.L.R. 10.1(a)(3); 10.1(a)(7). Plaintiff's papers do not comply with these requirements and, therefore, need not be considered.

### i. Motion for Leave to File an Amended Complaint

Plaintiff moves for leave to file an amended complaint. The motion does not comply with Local Rule 7.1(a)(4), which requires "[a] party moving to amend a pleading . . . [to] attach an unsigned copy of the proposed amended pleading to its motion papers." Local Rule 7.1(a)(4). The motion also does not comply with the Rule's requirement that she "set forth specifically the proposed amendments and identify the amendments in the proposed pleading, either through the submission of a red-lined version of the original pleading or other equivalent means." *Id.* Plaintiff does not even hint at what amendments she seeks to make. Rather, she states that "[i]n the interest of justice, and for Just Cause shown, due to impaired abilities and as a pro se plaintiff, I request an extension and enlargement of time to research the law, investigate, and respond accordingly with my amended complaint against the defendants which have been recently identified." Dkt. 165, at ¶4.

The basis for any proposed amendment should have been known to Plaintiff

long ago and she presents no valid reason for waiting until now to seek leave to amend. Moreover, this case has been pending for several years and discovery is closed. Accordingly, in light of the delay, the failure to follow the Local Rules, and the failure to identify a proper basis for amending the complaint, the motion to file an amended complaint is DENIED.

### ii. Extension of Time

Plaintiff also seeks "an extension and enlargement of time to research the law, investigate, and respond accordingly with my Summary Judgment Hearing against the defendants or I will be harmed and prejudiced." Dkt. 166, at ¶6. On November 14, 2012, Defendants filed a motion for summary judgment. Upon Plaintiff's request, the Court granted her an extension of time to respond to that motion. On January 8, 2013, Plaintiff filed her opposing papers together with a cross-motion for summary judgment. Subsequent thereto, Defendants filed opposition papers to the cross-motion and reply papers to their initial motion. Plaintiff seeks an extension of time to further reply.

Pursuant to Local Rule 7.1(c), "[t]he cross-moving party may not reply in further support of its cross-motion without the Court's prior permission." Accordingly, Plaintiff does not have the right to file additional papers in connection with the pending motions without the Court's permission. To the extent Plaintiff seeks such permission, the request is denied for failure to articulate a valid reason therefor. Her generic claims that she needs time to research the law, investigate and respond accordingly and that she will be harmed and prejudiced are insufficient grounds to warrant the filing of additional papers. For the foregoing reasons, Plaintiff's motions (Dkt. Nos. 165 and 166) are DENIED.

### iii.    Statement of Material Facts

The Local Rules of the Northern District require a party moving for summary judgment to submit a "Statement of Material Facts" which sets forth, with citations to the record, each material fact about which the moving party contends there exists no genuine issue.  N.D.N.Y.L.R. 7.1(a)(3).  Once a properly supported Local Rule 7.1(a)(3) Statement is submitted, the party opposing the motion must

> file a response to the [movant's] Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs. <u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party</u>.

*Id.* (underscoring in original).

The responding Statement of Material Facts is not a mere formality, and the courts apply this rule strictly. *See N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.,* 426 F.3d 640, 648-49 (2d Cir. 2005) (upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitted a responsive Rule 7.1(a)(3) statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations."); *Gubitosi v. Kapica,* 154 F.3d 30, 31 n.1 (2d Cir. 1998) (*per curiam*) (accepting as true material facts contained in unopposed local rule statement of material facts); *Meaney v. CHS Acquisition Corp.*, 103 F. Supp. 2d 104, 108 (N.D.N.Y. 2000) (deeming movant's Rule 7.1(a)(3) Statement admitted where non-movant's response "set forth *no* citations –

specific or otherwise – to the record") (emphasis in original); *McKnight v. Dormitory Auth. of N.Y.*, 189 F.R.D. 225, 227 (N.D.N.Y. 1999)(McAvoy, J.) ("deem[ing] the portions of Defendants' 7.1(a)(3) statement that are not specifically controverted by Plaintiff to be admitted"); *Osier v. Broome Cnty.*, 47 F. Supp.2d 311, 317 (N.D.N.Y. 1999) (McAvoy, J.) (deeming admitted all facts in defendants' Rule 7.1(a)(3) statement where "plaintiff submitted thirteen pages of purported facts without any indication where those facts can be located in the record"). Local Rule 7.1(a)(3) also states that the failure "to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." (underscore in original); *see Prestopnik v. Whalen*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003), *affd*, 83 F. App'x 363 (2d Cir. 2003) (denial of plaintiff's cross-motion for summary judgment for failure to comply with N.D.N.Y.L.R. 7.1(a)(3) in submitting a Statement of Material Facts Not in Dispute and failing to provide record citations); *see also Osier,* 47 F. Supp. 2d at 317 (N.D.N.Y.1999) ("The Local Rules are not suggestions, but impose procedural requirements upon parties litigating in this District.").

"[P]roceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment." *Viscusi v. Proctor & Gamble*, 2007 WL 2071546, at * 9 (E.D.N.Y. July 16, 2007); *see also Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."). Thus, while the Court must construe a *pro se* litigant's pleadings and papers liberally and interpret them to raise the strongest arguments that they suggest, *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y.

2003);[1] *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D.N.Y. 2004), the application of this lenient standard does not relieve a *pro se* litigant of the requirement to follow the procedural formalities of Local Rule 7.1(a)(3).  *Govan*, 289 F. Supp. 2d at 295; *see also Edwards v. INS*, 59 F.3d 5, 8 (2d Cir. 1995) ("While a *pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them.").

Plaintiff has not: (1) submitted an opposing Statement of Material Facts despite being advised of this obligation;[2] or (2) submitted a Statement of Material Facts in support of her cross-motion for summary judgment.  The failure of a moving party to file a properly supported Local Rule 7.1 Statement of Material Facts is fatal to a summary judgment motion.  *Riley v. Town of Bethlehem*, 5 F. Supp. 2d 92, 93 (N.D.N.Y. 1998).

---

[1] To construe pleadings liberally means the Court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Govan*, 289 F. Supp. 2d at 295.

[2] Plaintiff was served with the Northern District's standard summary judgment notification for *pro se* litigants, *see* Dk. 146-12. This notification provided:

> You are hereby advised that if a motion for summary judgment is filed by the defendant(s) in the above-referenced action, any factual assertions in the defendant's affidavits will be taken as true by the District Court unless you contradict these assertions in affidavit form.
>
> You may not simply rely on your complaint to oppose this motion. You must file a written response in opposition to this motion with the Court, and send a copy of same to opposing counsel.
>
> Pursuant to Local Rule 7.1 of the Northern District of New York, you are required to submit the following papers in opposition to this motion: (I) a **memorandum of law** (containing relevant factual and legal argument); (ii) **one or more affidavits** in opposition to the motion and (iii) a **short and concise statement of material facts** as to which you claim there are genuine issues in dispute. **These papers must be filed and served in accordance with the time set by Local Rule 7.1.**
>
> If you do not submit a short and concise statement of material facts as to which you claim there is a genuine issue in dispute, all material facts set forth in the statement filed and served by the defendant(s) shall be deemed admitted.

Dk. 146-12 (emphasis in original, footnotes omitted).

Accordingly, Plaintiff's cross-motion for summary judgment is DENIED and the properly supported material facts submitted with Defendants' summary judgment motion are deemed admitted.

### b.     Failure to Plead in Initial Amended Complaint

Defendants move for summary judgment on Plaintiff's claims under *res ipsa loquitur*, for disability harassment under the Americans with Disabilities Act ("ADA"), and for retaliation under the Family and Medical Leave Act ("FMLA") based upon the fact that such claims were not asserted in Plaintiff's amended complaint.[3] Defendants had no notice of such claims as they were not pled in Plaintiff's Amended Complaint. Therefore, the Court agrees with Defendants that such claims are not properly before the Court.

### c.     Effect of Acquittal

Much of Plaintiff's Complaint is based on her acquittal of charges based on the same facts as the decision to terminate her employment. This Court has previously addressed Plaintiff's contention that the acquittal of the criminal charges against her means "vindication with respect to anything else pertaining to the same incident." *Cross v. Potter*, No. 3:09-CV-1293, 2010 WL 5314151, at *6 (N.D.N.Y. Dec. 20, 2010). This Court further explained that the standards are different for a criminal and civil trial and the special rules that governed the arbitration. *Id.* The Court iterates that her acquittal

---

[3] This Court vacated the portion of the March 15, 2012 Order that granted Plaintiff leave to amend her FTCA claims. Therefore, Plaintiff's claims for the intentional infliction of emotional distress, defamation, and res ipsa loquitur against the U.S.P.S. are not properly before the Court. The Order also reiterated that Plaintiff's hybrid claim was dismissed. Dkt. 95, at 3. Plaintiff's ADA claim also fails because under the Act, an employer does not include "the United States [or] a corporation wholly owned by the government of the United Sates . . . ." 42 U.S.C. § 12111(5)(B)(I) (West 2009); *see also* 29 U.S.C. § 701(West 1998) ("This order does not create any right or benefit, substantive or procedural, enforceable at law by a party against the United States, its agencies, its officers, or any person.").

on the criminal charges has no impact on the instant litigation.

### d. Failure to Exhaust Administrative Remedies - Title VII Claims

Defendants move to dismiss the Title VII claims on the ground that Plaintiff failed to timely exhaust her administrative remedies. "Title VII requires that an employment discrimination claimant pursue administrative procedures before commencing a lawsuit and imposes a deadline for the initiation of such procedures." *Fitzgerald v. Henderson*, 251 F.3d 345, 358-59 (2d Cir. 2001). A federal employee must initiate administrative review within forty-five days after the allegedly discriminatory action occurred. 29 C.F.R. § 1614.105; *Fitzgerald*, 251 F.3d at 359. The forty-five day period serves as a statute of limitations and, "thus, as a general rule, claims alleging conduct that occurred more than 45 days prior to the employee's initiation of administrative review are time-barred." *Id.*

Here, Plaintiff was served with a Notice of Removal on January 14, 2008. This document clearly informed Plaintiff that her employment would be terminated effective February 23, 2008. Although Plaintiff may not have received official notice of her termination until a later date, it is well settled that the proper focus is upon the time of the discriminatory acts and not upon the time at which the consequences of those acts become most painful. *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980). Courts in this Circuit have specifically held that "[i]n a discriminatory discharge case in which the employer informs the employee of a decision to terminate, the limitations period begins to run on that date that the employer gives definite notice of that decision to the employee, not upon the formal date of the employee's discharge." *Carmellino v. Dist. 20 of the N.Y.C. Dept. of Ed.*, No. 03 Civ. 5942, 2004 WL 736988, at *15 (S.D.N.Y.

Apr. 6, 2004); *see also King v. Potter*, 2006 WL 842402 (E.D.N.Y. Mar. 27, 2006). In any event, it is undisputed that Plaintiff was aware of the Notice of Removal and the reason therefore as she filed a union grievance in January 2008. *See Robertson v. Potter*, 2011 WL 3511017, at * 5 (N.D. Tex. June 20, 2011).

Plaintiff did not initiate the administrative process until July 2009, long after the forty-five day period had expired. The mere fact that a grievance or some other collateral review of an employment decision may have been pending does not toll the running of the 45 day time. *Ricks*, 449 U.S. at 261; *Robertson*, at *5. Moreover, Plaintiff asserts no valid basis for invoking the continuing violation doctrine or equitable tolling. Accordingly, the Title VII claims relating to the issuance of the Notice of Removal and any earlier actions are dismissed for failure to exhaust Administrative Remedies.

### e.    Age & Gender Discrimination

Defendants next move to dismiss the age discrimination claim on the ground that Plaintiff has offered insufficient evidence suggesting that age was a motivating factor in the decision to terminate her employment.

To establish a prima facie case of age discrimination under the ADEA, Plaintiff must demonstrate that: (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009). Here, Plaintiff clearly meets the first and third elements and most likely also satisfies the second element. That leaves the issue of element four.

Aside from relying on her own age, Plaintiff offers insufficient evidence upon which a fair minded trier of fact could reasonably conclude that age was a factor in the decision to terminate her employment.  Further, Defendants have articulated a legitimate, non-discriminatory reason for its actions (their belief that Plaintiff submitted false medical documentation), and Plaintiff has failed to demonstrate that this reason was a pretext for unlawful age discrimination or that age otherwise was a motivating factor in the decision to issue a notice of removal.  The mere fact that Plaintiff may have been acquitted of criminal charges does not demonstrate that Plaintiff's reason was a pretext for unlawful discrimination.  *See Egonmwan v. Cook Cnty. Sheriff's Dep't*, No. 06 C 4764, 2009 WL 1139150, at *5 (N.D. Ill. Apr. 27, 2009) (holding that an employee's argument that the reason for his termination was pretext for discrimination based on his acquittal in a criminal matter is "without merit."); *see also Britton v. City of Poplar Bluff, Mo.*, 244 F.3d 994, 997 (8th Cir. 2001).

The same analysis equally applies to Plaintiff's claims of gender-based discrimination.  In her response to Defendants' interrogatories, Plaintiff does not identify any factual bases for her claim of gender based discrimination.  In a responsive affidavit, Plaintiff refers to gender-based comments made by her supervisor, George Alsheimer, in 2005.  Any such statements, assuming them to be true, occurred more than two years before the Notice of Removal, which is too far of a temporal gap to give rise to an inference that the Notice of Removal was motivated by gender.  *See Pellegrino v. Cnty. of Orange*, 313 F. Supp. 2d 303, 315 (S.D.N.Y. 2004) (holding that evidence of temporal proximity between a protected activity and termination can establish an inference of discrimination); *see also Terry v. Ashcroft*, 336 F.3d 128, 139

(2d Cir. 2003) (finding that comments made approximately one year before adverse employment action may give rise to discrimination); *Duncan v. N.Y.C. Transit Auth.*, 45 Fed. App'x 14, 17 (2d Cir. 2002) (holding that an eighteen-month temporal gap between employee's termination and her employer's failure to re-hire her was insufficient to establish an inference of discrimination). Moreover, the Notice of Removal was co-signed by Lisa Liles, Acting Manager, Distribution Operations, and there is no indication that she was motivated by Plaintiff's gender or that her decision to issue the Notice of Removal was unduly influenced by Alsheimer.

  **f.**  **Title VII Retaliation**

  Defendants also move for summary judgment on Plaintiff's Title VII retaliation claim. Plaintiff alleges Title VII retaliation in her amended complaint, *see* Dkt. 9, at ¶89, and she explains in her opposition papers that the she was retaliated against for "filling EEO Complaints opposing the hostile environment of the workplace and sexual harassment with threats of firing women 40+ who are on FMLA . . . ." Dkt. 156, at ¶16.

  Even assuming that Plaintiff filed a timely EEO complaint, this Court finds that the evidence proffered by Plaintiff is insufficient to survive summary judgment on her Title VII retaliation claims. Under 2000e–3(a), employers are prohibited from retaliating against employees because they file administrative or other complaints concerning the employer's alleged discriminatory practices. A plaintiff must prove a prima facie case of retaliation by a preponderance of the evidence that: (1) the plaintiff engaged in a protected activity; (2) the defendant was aware of the plaintiff's involvement in the protected activity; (3) an adverse employment action was taken against the plaintiff; and (4) there is a causal connection between the protected activity and the adverse action.

*Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111,117 (2d Cir. 2000) (citing *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993)).

If a plaintiff proves a prima facie case, a presumption of retaliation arises, and the burden then shifts to the employer to provide a legitimate, non-discriminatory reason for a plaintiff's termination. *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). Once an employer offers such proof, the burden shifts back to the plaintiff to show that retaliation was a motivating reason for the adverse employment action. *Jute*, 420 F.3d at 173 (citing *Fields v. New York State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 120-121 (2d Cir. 1997)). The causal connection between the adverse employment action and a plaintiff's protected activity can be "established indirectly by showing that the protected activity was closely followed in time by the adverse action," *Manoharan v. Columbia Univ. Coll. Of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988), or through "evidence such as disparate treatment of fellow employees who engaged in similar conduct, or *directly* through evidence of retaliatory animus directed against a plaintiff by defendant's." *DuBois v. New York*, 966 F. Supp. 144, 148 (N.D.N.Y. 1997) (citing *DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987) *cert. denied,* 484 U.S. 965 (1987) (emphasis in original)).

Here, as above, Plaintiff meets the first and third elements, and can likely meet the second element, which leaves the fourth element in dispute. Plaintiff claims that Alsheimer told her that she was too old for the job. *See* Dkt. 156, at p. 32. However, Plaintiff presents insufficient evidence, besides her own affidavit and an allegation that Alsheimer threatened her with termination. The Notice of Removal was

co-signed by Lisa Liles, and there is no indication that she was motivated by Plaintiff's protected activity or that her decision to issue the Notice of Removal was unduly influenced by Alsheimer. Any temporal connection between her EEO complaints on August 22, 2006 and May 7, 2007, and June 22, 2009, when she was terminated is too attenuated. *See Gorzynski v. Jet Blue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("This Court has not drawn a bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too attenuated to establish causation . . . .); *see also El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (holding that temporal proximity between events may give rise to an inference of retaliation under Title VII, but without more is insufficient to satisfy the burden to show evidence of pretext); *Dixon v. Int'l Fed'n of Accountants*, 416. Fed. App'x 107, 110 (2d Cir. 2011) ("noting that the two events must be 'very close," and that a proximity of three months or more is insufficient") (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

Further, Defendants have articulated a legitimate, non-discriminatory reason for its actions (their belief that Plaintiff submitted false medical documentation). Plaintiff has failed to demonstrate that this reason was a pretext for unlawful retaliation or that a retaliatory animus was a motivating factor in the decision to issue a notice of removal. Plaintiff otherwise offers insufficient evidence upon which a fair minded trier of fact could reasonably conclude that a retaliatory animus was a motivating factor in the decision to terminate her employment. Therefore, the Court dismisses Plaintiff's retaliation claims.[4]

---

[4] To the extent that Plaintiff alleges retaliation for taking FMLA leave, such claim need not be considered by this Court as it was not pled in her initial complaint, and the Court has denied Plaintiff leave to amend her complaint.

### g.     Claim Against John Potter in His Individual Capacity

Defendants move for summary judgment on Plaintiff's claim against John Potter in his individual capacity.  Plaintiff fails to allege any claim against Potter in his individual capacity.  When asked to describe in "full and complete detail the factual and legal basis for naming John Potter as a defendant in his individual capacity," Plaintiff stated: "Objection: This request is undecipherable and cannot be answered."  Dkt. Nos. 122, 130.  Further, Title VII claims and ADA claims cannot be brought against supervisory persons acting in their individual capacity.  *See Amin v. Quad/Graphics, Inc.*, 929 F. Supp. 73, 78 (N.D.N.Y. 1996) ("[T]he Second Circuit . . . has unambiguously held 'individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII.'") (citing *Tomka v. The Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995)); *see also Duprey v. Prudential Ins. Co. of Am.*, 910 F. Supp. 879, 884 (N.D.N.Y. 1996) ("The ADA does not impose liability on individuals."). Because Plaintiff has not alleged any claim against Potter in his individual capacity, the Court grants Defendants' motion for summary judgment on this claim.

### h.     Claim Under the Privacy Act

Defendants move for summary judgment on Plaintiff's claim under the Privacy Act on the grounds that she is unable to establish any violation of the Privacy Act.

The Privacy Act "regulates the collection, maintenance, use, and dissemination of information concerning individuals," *Carton v. Reno*, 310 F.3d 108,111 (2d Cir. 2002), and forbids disclosure by a federal government agency of any record which is contained in a system of records regarding an individual without that individual's written consent.  *See* 5 U.S.C. § 552a(b).  Before a plaintiff can bring a

claim under the Privacy Act, administrative procedures must be exhausted as set forth in 5 U.S.C. § 552a(d).  *See Liguori v. Alexander*, 495 F. Supp. 641, 646 (S.D.N.Y. 1980).

Plaintiff seems to assert four claims under the Privacy Act: (1) she was not given information that she requested, *see* 5 U.S.C. § 552a(g)(1)(B); (2) her records were disclosed in violation of the Act, *see* 5 U.S.C. § 552a(g)(1)(D); (3) her criminal acquittal and medical records should be expunged from the record, *see* 5 U.S.C. § 552a(d)(2); and (4) there is in inaccuracy in her record because her criminal charge remained in her record even though she was acquitted, 5 U.S.C. § 552a(g)(1)(C); *see* Dkt. 156, at p. 20.

 To the extent that Plaintiff claims that the acquittal of the criminal charge negates the fact that criminal charges were brought against her, Dkt. 9, at ¶77,  the Court DISMISSES this claim for reasons stated above regarding Plaintiff's understanding of the relevancy of the criminal charge.  The record of a criminal acquittal is not an inaccuracy within her record simply because Plaintiff believes that the criminal charge was improperly brought against her.

The Court addresses Plaintiff's information request and expungement claims together because both claims require a proper pleading that Plaintiff exhausted administrative remedies prior to bringing such claims before this Court.  *See Sussman v. U.S. Dept. of Justice*, No. 03 Civ. 3618, 2006 WL 2850608, at *4 (E.D.N.Y. Sept. 30, 2006); *see also Miller v. United State*s, 630 F. Supp. 347, 349 (E.D.N.Y. 1986) (citing *Hedley v. United States*, 594 F.2d 1043, 1044 (5th Cir. 1979); *Morpurgo v. Bd. of Higher Educ.*, 423 F. Supp. 704, 714 n.26 (S.D.N.Y. 1976); 5 U.S.C. § 552(a)(6)(A)).

Exhaustion of administrative remedies under the Privacy Act for a request for information and expungement claim requires that the plaintiff obtain a response from the agency pertaining to the requested information or the information requested to be expunged before the claim can be brought before a district court.  *See Sussman*, 2006 WL 2850608, at *5 (and cases cited therein); *see also Metadure Corp. v. United States*, 569 F. Supp. 1496, 1499 (E.D.N.Y. 1983) (a phone conversation requesting expungement is insufficient to exhaust administrative remedies); *Quinn v. Stone*, 978 F.2d 126, 137-38 (3d Cir. 1992) (holding that because Plaintiff did not request to have records amended or expunged, summary judgment was granted on this claim for failure to exhaust administrative remedies).

Regarding Plaintiff's request for information claim, Plaintiff does not allege that she made a request for information.  *See* Dkt. 9, at p. 8; *see also* Dkt. 156, at pp. 19-20.   Plaintiff has not pled that she made a request for information, nor is there evidence in the record of a response from the U.S.P.S. regarding a request for information.  Since Plaintiff does not allege that she took the first step in acquiring the information requested, the appropriate prerequisite measures have not been met.  Accordingly, the Court does not have jurisdiction to review Plaintiff's access claim under the Privacy Act on the merits.

The same analysis applies to Plaintiff's expungement/amendment claim.  As to Plaintiff's request that her medical records and the criminal charge be expunged from her record in December 2008, she does not allege that she complied with the appropriate prerequisite measures with sufficient specificity to survive summary judgment.  Plaintiff does not point to a conversation with anyone in which she requested

the expungement, she does not indicate a person to whom she asked of the request, and she does not identify any document in which she may have requested the information or any other document that might create a reasonable inference that Plaintiff requested the information be expunged.  Plaintiff offers insufficient evidence upon which a fair minded trier of fact could reasonably conclude that she satisfied the prerequisite administrative remedies necessary for this Court to consider her Privacy Claims on the merits.  Accordingly, the request for information and expungement/amendment claims under the Privacy Act are DISMISSED.

Plaintiff has also insufficiently pled the requirements of her disclosure claim under the Privacy Act.  To succeed in a Privacy Act disclosure claim, "a plaintiff must show that: 1) the information at issue is a record contained within a system of records; 2) the agency violated the Act with respect to that record; 3) the disclosure had an adverse effect on the plaintiff; and 4) the violation was willful and intentional."  *Tarullo v. Def. Contract Audit Agency*, 600 F. Supp. 2d 353, 358 (D. Conn. 2009) (quoting *Int'l Union, Sec., Police, and Fire Prof'ls of Am. (SPFPA) v. U.S. Marshal's Serv.*, 350 F. Supp. 2d 522, 528 (S.D.N.Y. 2004) (citing *Quinn v. Stone*, 978 F.2d 126, 131 (3d Cir. 1992))).  A system of records is "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual."  5 U.S.C. § 552a(a)(5).  An agency is defined as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency."   5 U.S.C. § 552(f)(1).   This

provision only applies when "the document becomes incorporated into a record-keeping system under the agency's control that the Act's prescriptions apply." *Bechhoefer v. U.S. Dept. of Justice*, 312 F.3d 653, 655 (2d Cir. 2002).

Plaintiff does not allege any further facts in any of her affidavits or in her opposition to Defendants' motion for summary judgment other than "the Postal Service has and continues to pass around every scrap of paper they can copy to attach as phony evidence." Because Plaintiff does not articulate the disclosure of any specific information contained in a system of records, Defendants' motion for summary judgment on Plaintiff's Privacy Claim is GRANTED.

Any constitutional claim that Plaintiff attempts to bring must also fail because Plaintiff's claim "fails to allege anything but conclusory, non-specific allegations of constitutional violation, without indicating what constitutional right(s) is/are violated" and "how the(se) right(s) was/were violated and by whom." *Shannon v. General Elec. Co.*, 812 F. Supp. 308, 322-23 (N.D.N.Y. 1993), *aff'd*, 186 F.3d 186 (2d Cir. 1999). Accordingly, Defendants' motion for summary judgment pertaining to Plaintiff's claim of constitutional privacy is GRANTED and Plaintiff's cross-motion for summary judgment on this claim is DENIED.[5]

IV.     **CONCLUSION**

For the foregoing reasons, the Defendants' motion for summary judgment is GRANTED, Plaintiff's cross-motion is DENIED, and Plaintiff's Amended Complaint is

---

[5] To the extent that Plaintiff is asserting a privacy violation under New York State law, this Court will exercise its discretion in refusing to apply supplemental jurisdiction to such a claim pursuant to 28 U.S.C. § 1367(c)(3), as Defendant's motion for summary judgment is granted on all claims.

DISMISSED.  The Clerk of the Court is instructed to close the file in this matter.

**IT IS SO ORDERED.**

Dated: March 19, 2013

Thomas J. McAvoy
Senior, U.S. District Judge